## INVESTORS' UTILITY CORPORATION et al. v. CHALLACOMBE.

### No. 1063.

Court of Civil Appeals of Texas. Waco.

May 21, 1931.

Robert F. Higgins, of Marlin, W. W. Mason, of Mexia, and J. E. & B. L. Bradley, and Mr.

& Mrs. C. S. Bradley, all of Groesbeck, for appellants.

M. L. Bennett, of Normangee, for appellee.

ALEXANDER, J.

On January 23, 1930, the Investors' Utility Corporation entered into a contract with J. R. Challacombe, for a community oil lease, in part as follows:

"The State of Texas, County of Freestone

"We, the undersigned landowners hereby bind and obligate ourselves to execute community Oil and Gas leases * * * covering the amount of land set opposite our names, * * * said leases shall be executed in the name of Investor's Utility Corporation, which Corporation agrees that within ninety days after this is signed, it will secure the services of a competent geologist to survey this tract, and if same is approved by said geologist, then it will commence the drilling of a test well for Oil or gas within thirty days from such approval by said geologist * * *. It is understood that said leases shall be executed by the subscribers hereto when the acreage has been approved by said geologist, as set out above, at which time said leases are to be placed in the Oakwood State Bank in escrow, pending spudding in of said well, at which time said leases are to be turned over to Investor's Utility Corporation.

"In witness whereof, the parties hereto have hereunto subscribed their names, this the ——— day of January, A. D. 1930.

"Investor's Utility Corporation,
"By W. J. Keeling, Agent
"Landowners: J. R. Challacombe
"Number of acres: 6,860, more or less * * * "

The agreement was signed by other landowners, but they are not involved in this controversy. The landowner, Challacombe, brought this suit in trespass to try title against the Investors' Utility Corporation, which will hereafter be referred to as the corporation, and others who claimed an interest in the contract, to recover the title and possession of the land described therein, and to cancel the contract on the ground that he had not executed the same. The defendants pleaded not guilty and disclaimed as to the land and reconvened for damages in the sum of $40,160, alleging that the plaintiff had breached the contract by leasing the land to another concern. A trial was had before the court without a jury, and judgment was entered that neither party recover, and that each party pay one-half of the costs. The defendants have appealed.

The trial court filed findings of fact in which it was found, among other things, that the appellee, Challacombe, executed the contract; that the same was a valid and binding contract; that the corporation had ninety days from the date of the contract in which to procure a geologist to survey the land; that the corporation used only seven days in procuring such geologist, and that the geologist made a favorable report on the land to the corporation within nineteen days from the date of the contract; that the corporation took no further steps in carrying out any of the terms of the contract or of putting Challacombe in possession of the facts which would authorize him to execute the lease until April 15, 1930, about sixty-two days after the date of the favorable report by the geologist. The findings appear to be supported by the evidence, and are not challenged by either party. The plaintiff executed another lease on the same land to another concern on March 29, 1930, approximately forty-five days after the favorable report by the geologist.

◼ We will first discuss the right of the defendants, the corporation, and others, to recover damages on their cross-action. The execution of the lease by Challacombe, the landowner, to the other concern constituted a repudiation of the contract by him, and, if at that time the corporation was entitled to performance of the contract, it is entitled to damages for the breach. On the other hand, if at that time the corporation had itself forfeited the contract, then it was not entitled to damages for the breach by the plaintiff.

The contract at the time of its execution was unilateral and executory, and was in the nature of an option in favor of the corporation. No money consideration was paid for the option. The corporation had the full period of ninety days in which to secure the services of a geologist. The geologist was to survey the land, but there was no time stipulated in which he was to complete his survey and make his report. If his report should prove unfavorable, no further obligation would rest on the corporation. If the report of the geologist proved favorable, the corporation was to begin the drilling of a test well within thirty days from the date of such report. The provision for a survey of the land by the geologist and a favorable report by him was a condition precedent for the establishment of a binding contract between the parties. The corporation performed this condition by procuring the geologist and the securing of a favorable report. However, the contract contained the further covenant on the part of the corporation that it would begin the drilling of the test well within thirty days from the date of such report. This it did not do within the time specified. It becomes necessary, therefore, to determine whether the corporation was responsible for this breach, whether time was of the essence of the contract, and whether this was such a breach as would forfeit the contract.

◼ The contract, in addition to containing the provision that, in the event the report of the geologist was favorable, the corporation

would commence the drilling of a test well within thirty days from the date of such approval, also provided that the landowner would execute his lease "when the acreage has been approved by said geologist," and that he would place same in the bank in escrow pending the spudding in of the well. The landowner did not execute the lease nor place same in escrow, and the corporation did not begin the drilling of the well within the time specified. Did the failure of the landowner to execute the lease and place the same in the bank relieve the corporation of the obligation of spudding in the well within the time specified? While the contract provides that the lease shall be executed when the acreage has been approved by said geologist, it does not provide how the landowner should ascertain that the land had been surveyed by the geologist and a favorable report made thereon. Ordinarily, a party contracting to do an act on the happening of an uncertain event is not entitled to notice of that event as a condition precedent, but, when he contracts to do a thing on the happening of an event that will not ordinarily come to his knowledge, and he must guess or speculate about the matter, and the knowledge of the happening of such event is within the peculiar knowledge of the opposite party, then notice thereof must be given him by such opposite party, unless he actually gains knowledge thereof otherwise. 13 C. J. 635, § 705; In re Millbourne Mills Co. (D. C.) 165 F. 109, 111; Kelly v. Webb, 27 Tex. 368; Phœnix Mutual Life Ins. Co., v. Wakefield, (English case) 6 M. & W. 442, 151 Reprint, 485.

█ In the case at bar, the corporation was to select and employ the geologist, and he might be employed at any time during the ninety-day period. Since the survey was to be made by an employee of the corporation and for its benefit, to enable it to determine whether it would accept the lease, it is clear that the report was to be made to the corporation and not to the landowner. The landowner had no way of ascertaining at what time during the ninety-day period the geologist would be employed nor when he would complete his report, nor the result thereof. The date of the making of the report and the result thereof was uncertain, and was peculiarly within the knowledge of the corporation. It would therefore be implied that the corporation would notify the landowner when the report was made and the result thereof, and would call on him to execute his lease and place same in escrow. Such notice from the corporation was necessary in order to complete its acceptance of the contract. The corporation had bound itself in all events to begin the drilling of the well within thirty days from the date of such report, and, if it desired the land-

owner to execute the lease and place same in escrow before the beginning of the well and within the thirty-day period, it should have called on him to execute the lease. The evidence shows that the landowner knew that the survey was being made, but there was no evidence that he knew that it had been completed nor the result thereof. The landowner was therefore not in default in failing to execute and deliver the lease within the thirty days after such report.

█ Was time of the essence of the contract? At common law the general rule was that a time stipulated in the contract for its performance was of its essence, unless a contrary intent appeared from the face thereof. In equity, time was not considered as of the essence of the contract, unless it affirmatively appeared that the parties so regarded it. Under the modern rule, whether time is of the essence of the contract is dependent upon its provisions, purpose, and the surrounding circumstances, showing the intention of the parties that the contract must be performed at or within a given time. 13 C. J. 686, § 783; 10 Tex. Jur. 417, § 239.

██ It is settled law that, where the contract is unilateral or in the nature of an option, time is of the essence of the contract, and, in order to secure the benefits, the party holding such option must perform within the time specified therein. Johnson v. Portwood, 89 Tex. 235, 34 S.W. 596, 787; 10 Tex. Jur. 420; Wilbanks v. Selby (Tex. Civ. App.) 227 S. W. 371. Likewise, it is generally held that in oil and gas mining leases and contracts for the drilling of oil or gas wells time is of the essence of the contract, and failure to comply within the time specified will authorize a forfeiture. This is because of the vagrant and fugitive nature of oil and gas, their liability to wander or to be drawn elsewhere, if not developed, the constant shifting of the field of operation, and the fluctuation in value and the opportunity of the lessee to injure or oppress the lessor by delaying developments. Hitson v. Gilman (Tex. Civ. App.) 220 S. W. 140, par. 9; Young v. Jones (Tex. Civ. App.) 222 S. W. 691, par. 2; Miller v. Deahl (Tex. Civ. App.) 239 S. W. 679, par. 10; Masterson v. Amarillo Oil Co. (Tex. Civ. App.) 253 S. W. 908, par. 11; Stephenson v. Calliham (Tex. Civ. App.) 289 S. W. 158, par. 4; 10 Tex. Jur. 420.

From the nature of the contract here involved, the specific provisions thereof, and the purpose to be accomplished, it is apparent that the time for performance as therein provided was of the essence thereof.

█ Since the corporation breached its part of the contract by failing to notify the landowner of the result of the survey and in failing to begin the drilling of a test well within the time provided in the contract, it

becomes necessary to determine whether the landowner had the right to treat the entire contract as breached and to repudiate it or whether his only remedy was in damages for such breach. Ordinarily, a breach of an independent covenant by one party will not entitle the other party to rescind the contract; but a breach of a dependent covenant entitles the other party to treat the contract as abandoned. Whether a promise in a contract is dependent or independent depends primarily on the intention of the parties as determined from the language of the contract. The presumption is that all stipulations in a contract are dependent, and a promise will be so regarded in case of doubt. 10 Tex. Jur. 327; 13 C. J. 568, § 539; Reitzer v. Medlake Development Co. (Tex. Civ. App.) 27 S.W.(2d) 563, par. 3; Rigsby v. Boone County State Bank (Tex. Civ. App.) 241 S. W. 207, par. 4. The corporation prepared the contract, and the familiar rule is that it is to be construed most strongly against the one preparing it. 13 C. J. 544, § 516; 10 Tex. Jur. 277; Phillips v. Western Union Telegraph Co., 95 Tex. 638, 69 S. W. 63.

Where the promise goes to the entire consideration of the contract, and a contrary intent is not shown, such covenant is dependent, and a failure of the promisor to comply therewith deprives him of the right to demand enforcement of the contract. Rigsby v. Boone County State Bank (Tex. Civ. App.) 241 S. W. 207, par. 3; 10 Tex. Jur. 328, 13 C. J. 571; Johnson v. Portwood, 89 Tex. 235, 34 S. W. 596, 787; Wilbanks v. Selby (Tex. Civ. App.) 227 S. W. 371; Smith v. Carpenter (Tex. Civ. App.) 257 S. W. 637; Garrison v. Cooke, 96 Tex. 228, 72 S. W. 54, 61 L. R. A. 342, 97 Am. St. Rep. 906; Presidio Mining Co. v. Bullis, 68 Tex. 581, 590, 4 S. W. 860.

In the case of an option contract or where the contract is executory as in this case, and there is a breach in respect to material parts, and no supervening equities have arisen, a rescission may be had by the other party. Hausler v. Harding Gill Co. (Tex. Com. App.) 15 S.W.(2d) 548, par. 2; Powers v. Sunylan Co. (Tex. Com. App.) 25 S.W.(2d) 808, par. 2.

In the case at bar, the contract was executory. The sole consideration accruing to the landowner was the development of his land for oil and gas mining purposes. His entire purpose was to secure the drilling of a test well. Time was the essence of the contract. The failure to begin the drilling of the well within the time specified was therefore a breach in a material part. The corporation could not prolong nor extend the time for the beginning of the well by withholding the report of the geologist and failing to call on the landowner for the lease. The corporation having breached the contract in a material part, the landowner was entitled to treat it as abandoned and to lease the premises to another party without subjecting himself to liability for damages.

The corporation contends that, since Challacombe did not specifically plead the abandonment of the contract by the corporation, he is not entitled to urge same as a defense to its action for damages for the alleged breach on his part. Challacombe sought to have the contract canceled on the sole ground of non est factum. In this he failed. The corporation reconvened and sought to recover damages for the breach by Challacombe. As to the cross-action, the corporation became plaintiff. The duty rested on it to allege and prove every essential fact necessary for a recovery. Where one party seeks to enforce performance of a contract or to recover damages for a breach thereof, and the contract contains mutual covenants or requires him to do an act to entitle him to the action, he cannot maintain such action without alleging and proving performance or tender of performance on his part, unless such performance has been excused. 13 C. J. 629, § 697; Id. p. 571; Garrison v. Cooke (Tex. Civ. App.) 96 Tex. 228, 72 S. W. 54, 61 L. R. A. 342, 97 Am. St. Rep. 906; 10 Tex. Jur. 402; Matthews v. Deason (Tex. Civ. App.) 233 S. W. 330, par. 1; Shepard v. Weiss (Tex. Civ. App.) 28 S. W. 355. One who has himself breached the contract cannot insist on performance, nor recover for breach by the other party without satisfactorily accounting for his own breach. Kidd-Scruggs Co. v. Tyler Hotel Co. (Tex. Civ. App.) 270 S. W. 566, par. 2. The burden was therefore on the corporation to allege and prove performance of its part of the contract. It alleged, but failed to prove, performance. Since the burden was on the corporation to prove performance, Challacombe under his general denial was entitled to prove nonperformance by the corporation in order to defeat its action for damages.

The appellants moved for a new trial on the ground of newly discovered evidence showing that the report of the geologist was not made until long after the time when Challacombe had repudiated the contract by leasing the land to the other concern. On the trial, the appellants' agent testified positively that the report of the geologist was made within eighteen days after the date of the original contract. The evidence of the time of the making of such report was within the knowledge of the appellant. The burden was on it to produce such testimony. The trial court therefore did not abuse its discretion in refusing the new trial.

The appellee, Challacombe, alleges that the court committed fundamental error in refusing to enter judgment for him for the title and possession of the land. He, as plaintiff, sued in trespass to try title. The defendants pleaded not guilty, and then disclaimed

any interest in the land, and sought to recover damages for the breach of the contract. A disclaimer is an admission upon the record of the plaintiff's rights, and a denial of the assertion of title on the part of the defendant, and, where such disclaimer is filed, it is fundamental error for the court to refuse to render judgment for the plaintiff for the land. Revised Statutes, art. 7385; Snyder v. Compton (Tex. Civ. App.) 29 S. W. 73; Taylor v. Higgins Oil & Fuel Co. (Tex. Civ. App.) 2 S.W. (2d) 288, par. 13; Tull v. Wilbarger County (Tex. Civ. App.) 36 S.W.(2d) 316, par. 1; Brown v. Brown (Tex. Civ. App.) 280 S. W. 918, par. 2; Herring v. Swain, 84 Tex. 523, 19 S. W. 774. The trial court should have entered judgment for the plaintiff for the land in question.

The judgment of the trial court denying the plaintiff's right to recover the land is reversed, and judgment is here rendered in favor of the plaintiff against all defendants for the title and possession of the land in question. The judgment of the trial court in all other respects is affirmed.